ROBERT M. MURPHY, Judge.
FACTS AND PROCEDURAL HISTORY
| ¡.Nicole Y. Cossé (“plaintiff”) and Ivan A. Orihuela (“defendant”) were married on December 1, 2000. Prior to their marriage, the parties opted out of Louisiana’s community property regime and entered *952 into a separation of property regime. On March 3, 2006, the parties divorced. At the time of the divorce, plaintiff “was under the impression” that state and federal income taxes for 2004 had been filed and paid in full. However, in 2007, plaintiff learned that past due taxes for 2004 were owed. Upon receiving this notice, plaintiff contacted defendant who confirmed that the taxes had not been paid. The parties subsequently entered into an agreement whereby plaintiff agreed to file and pay the state taxes and the defendant agreed to file and pay the federal taxes and they would settle up at a later date. The parties’ agreement and subsequent payments form the basis of the dispute. The scope of the dispute in the trial court did not include entitlement to tax refunds from the State or IRS.
Pursuant to that agreement, on August 6, 2007, plaintiff submitted a payment of $3,171.00 to the Louisiana Department of Revenue for the 2004 state taxes. Plaintiff continued to inquire of defendant if he had filed and submitted Inpayment for the federal taxes. It was decided that plaintiff and defendant would each file “married separate” federal tax returns for 2004. On or around August of 2007, plaintiff filed a federal tax return for 2004 as “married filing separately” and submitted a payment for her tax liability in the amount of $1,918.00. Plaintiff also filed her 2005 federal tax return in 2007 as “married filing separately” and was due a refund of $2,710.00. However, the Internal Revenue Service (“IRS”) seized this amount and credited it to the outstanding balance on the 2004 liability.
On October 22, 2008, plaintiff filed a Request for Innocent Spouse Relief with the IRS, stating that she had filed a married separate return for 2004 and that the remaining tax liability was defendant’s. When the IRS denied this relief, plaintiff learned that an unsigned joint return for 2004 had previously been filed on June 7, 2005. This joint return, filed in June 2006, predated the “married separate” return filed by plaintiff in August 2007.
Plaintiff then learned that the tax liability for the 2004 state income taxes was still not satisfied; so, on February 4, 2009, she submitted an additional payment of $979.00 to the Louisiana Department of Revenue. Her total payments to the State of Louisiana for 2004 income taxes total $11.53.00.
Then, on May 1, 2009, after discovering that a federal tax lien for the 2004 federal tax liability of $10,944 had been placed on her house and in an effort to release that lien, plaintiff submitted a payment to the United States Treasury in the amount of $10,862.60. On May 13, 2009, the federal tax lien on plaintiffs house was released.
On May 4, 2009, defendant received correspondence from the IRS indicating that he had overpaid his 2008 taxes in the amount of $600.00 and that the IRS had applied that overpayment to the outstanding 2004 tax liability. Defendant also introduced into evidence copies of checks made payable to the Louisiana Department of Revenue for state tax liabilities for the years 2004, 2005, |4and 2006. On May 18, 2009, five days after the plaintiff paid the 2004 taxes, the defendant received correspondence from the IRS indicating that he had overpaid on his 2006 taxes in the amount of $17,822.72 and that the IRS had applied that overpayment to outstanding tax liabilities for 2004 and 2005. The IRS applied $10,248.22 to 2004 and $7,574.50 to 2005. Appellant did not introduce any copies of checks to the IRS.
On October 26, 2009, plaintiff received a notice from the IRS indicating that she still owed $120.11 regarding the 2004 tax liability, which she paid by check on November 2, 2009. Her tax payments consis *953 tently preceded his payments and responses. Her total payments to the IRS for 2004 total $15,610.71.
On July 1, 2010, plaintiff filed a Petition for Damages in the First Parish Court for the Parish of Jefferson seeking reimbursement from defendant for the amounts she paid for 2004 tax liabilities. The parties’ agreement was that plaintiff would file and pay state income taxes for 2004 and defendant would file and pay federal income taxes for 2004 and they would settle up later.
On March 24, 2011, the matter proceeded to a judge trial, at the conclusion of which the court found in favor of plaintiff, awarding her $15,785.66, plus interest and costs. On March 29, 2011, defendant filed a motion for new trial and/or a motion for appeal in the event his motion for new trial was denied. On April 11, 2011, the trial court denied defendant’s motion for new trial. At that time, the trial court did not address defendant’s motion for appeal. Thereafter, on September 1, 2011, the trial court acknowledged its prior oversight and granted defendant a suspensive appeal.
ASSIGNMENT OF ERROR NUMBER ONE
In defendant’s first assignment of error, he contends that plaintiffs action against him is delictual pursuant to LSA-C.C. art. 3492 and is subject to a liberative prescription of one year.
| .DISCUSSION
Defendant asserts that he is entitled to raise the peremptory exception of prescription on appeal pursuant to LSA-C.C.P. art. 2163.[1] Other than referencing the code article, he cites no authority for this contention but argues that plaintiffs action has prescribed.
A review of the record reveals that defendant raised an exception of prescription in his answer to plaintiffs petition on September 30, 2010 and at trial orally reserved his right to raise the exception on appeal. The peremptory exception must be raised in a formal pleading and is not properly raised in oral arguments or by brief. Natchitoches Parish Police Jury v. Natchitoches Sportsman’s Ass’n, 11-102, p. 3 (La.App. 3 Cir. 6/15/11), 67 So.3d 1284, 1286, writ denied, 11-1559 (La.10/7/11), 71 So.3d 315. We find that because defendant raised his exception of prescription by way of formal pleading in the trial court, that this issue is properly before this Court.
Plaintiff responds that her cause of action against defendant is a personal action pursuant to LSA-C.C. 3499 and is subject to a liberative prescription of ten years. As such, she asserts that her action has not prescribed.
A delictual action is a “tort action” or “an action seeking damages for injury caused by the act of another.” Langlois v. Allied Chem. Corp., 258 La. 1067, 249 So.2d 133, 136 (1971).[2] A personal action is one brought to enforce an obligation against the [(¡obligor, personally and independently of the property which he may own, claim, or possess. LSA-C.C.P. art. 422.
*954 Courts have found claims for reimbursement to be personal actions and subject to the ten-year liberative prescription under LSA-C.C. art. 3499. See Birch v. Birch, 45,702 (La.App. 2 Cir. 11/3/10), 55 So.3d 796, writ denied, 10-2670 (La.1/28/11), 56 So.3d 959 (citation omitted); Hagerdorn v. Klotz, 185 So. 658 (La.App. 1 Cir.1939); Johnson v. Hall, 185 So. 64 (La.App. 1 Cir.1938).
In the instant case, because plaintiffs cause of action is a claim for reimbursement for the 2004 federal taxes she paid arising from a breach of their agreement, we find that the action is personal and subject to the ten-year liberative prescription period in LSA-C.C. art. 3499.
Although the details are not clear regarding the parties’ agreement and the breach of that agreement, we find that the agreement was entered into in or around 2007 and was breached sometime soon thereafter. As a result, we find plaintiffs action, filed on July 1, 2010, was instituted well within the ten-year prescriptive period and was not prescribed.
This assignment of error has no merit.
ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE
In his second and third assignments of error, defendant argues that the Louisiana Supreme Court’s appointment of Judge Dennis Waldron to preside over the case was contrary to law, and as such, the judgment is an absolute nullity. Specifically, defendant argues that because the supreme court’s appointment of Judge Waldron did not comply with LSA-C.C.P. arts. 4861-4866, it is absolutely null.
DISCUSSION
The record indicates that on December 8, 2010, Judge Rebecca M. Olivier, Division “A,” recused herself from the case and the case was re-allotted to 17Division “B.” On December 9, 2010, Judge George W. Gia-cobbe, Division “B,” recused himself and the case was re-allotted to Division “R,” Judge Niles A. Helmers. Due to the recu-sals, Judge Olivier requested that the Louisiana Supreme Court assign an ad hoc judge to the First Parish Court to preside over the case. On December 27, 2010, the Louisiana Supreme Court issued an order, pursuant to Article V, Section 5(A) of the Louisiana Constitution of 1974,[3] appointing Retired Judge Dennis J. Waldron to preside as ad hoc judge over the matter.
The pertinent article that defendant claims was not complied with is LSA-C.C.P. art. 4864(A), which provides:
When a judge of a parish or city court recuses himself, he shall appoint another judge of the same parish or city court, if that court has more than one division; otherwise, he shall appoint either a parish or city court judge from an adjoining parish or, as judge-ad-hoc, an attorney domiciled in the parish who has the qualifications of a parish or city court judge.[4]
The record indicates that this procedure was followed until Judge Olivier submitted a request to the supreme court to assign an ad hoc judge. The record does not indicate why that request was submitted, *955 but we nevertheless find the appointment of Judge Waldron was not improper in light of the supreme court’s authority over all other courts.
Under Article V, Section 5(A) of the Louisiana Constitution of 1974, the Louisiana Supreme Court has the authority to assign a sitting or retired judge to any court. State v. Hyman, 10-335, p. 7 (La.App. 5 Cir. 2/15/11), 62 So.3d 146, 152, writ denied, 11-0558 (La.9/30/11), 71 So.3d 282. It is well recognized this constitutional grant of supervisory authority to the Louisiana Supreme Court over Rail other courts is plenary, unfettered by jurisdictional requirements, and exercisable at the complete discretion of the court. Unwired Telecom Corp. v. Parish of Calcasieu, 03-0732, p. 8 (La.1/19/05), 903 So.2d 392, 400 (citations omitted).
Additionally, defendant asks us to find the judgment issued by Judge Wal-dron an absolute nullity, but cites no legal support for this proposition. Absolute nul-lities, which may be attacked at any time, at any place, by rule or any other method, are found in LSA-C.C.P. art. 2002. See Anderson v. Anderson, 98-1012 (La.App. 4 Cir. 8/26/98), 718 So.2d 582, 583 n. 2. Subsection (A) of that article provides the exclusive[5] grounds for rendering a judgment absolutely null:
[I]f it is rendered:
(1) Against an incompetent person not represented as required by law.
(2) Against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid judgment by default has not been taken.
(3)By a court which does not have jurisdiction over the subject matter of the suit.
As there is no basis for nullifying a judgment due to improper recusal procedure, as alleged in this case, we find the judgment in this case is not an absolute nullity.
These assignments of error have no merit.
ASSIGNMENTS OF ERROR NUMBERS FIVE, SIX, AND TEN[6]
In his fifth assignment of error, defendant argues that the trial court erred when it rendered judgment in favor of plaintiff even though the evidence showed that defendant paid in full the relevant state and federal tax liability which plaintiff claims to have paid. In his sixth assignment of error, defendant argues that the trial IflCourt’s judgment was in error because plaintiff failed to show that she paid to the IRS and to the Louisiana Department of Revenue the amounts awarded to plaintiff by the trial court. And in his tenth assignment of error, defendant claims that the trial court erred when it rendered judgment in favor of plaintiff even though the evidence showed that the amounts awarded to plaintiff exceed any applicable amounts shown by the evidence and exceed any applicable amounts claimed by plaintiff.
STANDARD OF REVIEW
By these assignments of error, defendant contests the trial court’s findings of fact. Accordingly, the “manifest error” or “clearly wrong” standard of review applies. Under this standard, a court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless *956 it is clearly wrong. Stobart v. State through Dept. of Transp. & Dev., 617 So.2d 880, 882 (La.1993). This requires the reviewing court to review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. Id. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Id. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id. However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its faee, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Id.
ImDISCUSSION
At trial, defendant introduced into evidence correspondence from the IRS in 2008 and 2009 indicating that an overpayment on defendant’s 2006 and 2008 federal taxes was applied to unpaid tax liabilities from 2004 and 2005. The IRS applied $10,848.22 to 2004.
The plaintiff introduced into evidence copies of checks she paid to the IRS in the amounts of $10,862.60 and $120.11 regarding the 2004 tax liability. The evidence also indicates that plaintiffs 2005 tax refund in the amount of $2,710.00 was seized by the IRS and applied to the outstanding 2004 tax liability and $1,918.00 was paid on her 2004 married filing separate return for a total payment for 2004 of $15,610.71 in federal taxes. The evidence further indicates that plaintiff paid $4,453.00 to the Louisiana Department of Revenue in connection with the 2004 state taxes.
In conclusion, the trial judge correctly found, in spite of much confusion, that there was an agreement by the parties whereby plaintiff agreed to file and pay the state taxes and the defendant agreed to file and pay the federal taxes, and they further agreed they would settle up at a later date. The trial judge considered all the evidence as well as the testimony of both parties, and found in favor of plaintiff in the amount of $15,736.55, in effect the amount of federal taxes that she paid. We find the trial court’s conclusion is basically correct and certainly not manifestly erroneous in light of the record. Correcting a mathematical error, this court amends the award to $15,610.71, the total 2004 federal tax payments that the plaintiff made. The court affirms the trial court’s judgment as amended. The court does not address any entitlement to refunds from the State or IRS.

AMENDED; AFFIRMED AS AMENDED

. LSA-C.C.P. art. 2163 provides:
The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record. If the ground for the peremptory exception pleaded in the appellate court is prescription, the plaintiff may demand that the case be remanded to the trial court for trial of the exception.

. Langlois has been superseded by statute on grounds inapposite to this discussion. See Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988).

. Article V, Section 5(A) provides:
The supreme court has general supervisory jurisdiction over all other courts. It may establish procedural and administrative rules not in conflict with law and may assign a sitting or retired judge to any court. The supreme court shall have sole authority to provide by rule for appointments of attorneys as temporary or ad hoc judges of city, municipal, traffic, parish, juvenile, or family courts.

. This article is applicable to the First Parish Court for the Parish of Jefferson by virtue of LSA-R.S. 13:2561.10.

. See Official Revision Comment (e); Accardo v. Dimiceli, 226 La. 435, 76 So.2d 521, 522 (1954).

. Because we find merit in defendant's fifth, sixth, and tenth assignments of error, we pre-termit discussion of his other assignments of error.